℘JS 44  (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

BioSensory, Inc.

**(b)** County of Residence of First Listed Plaintiff    Windham
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Ian E. Bjorkman--Wiggin and Dana
One Century Tower, New Haven, CT 06508    (203) 498-4496

## DEFENDANTS

Robert H. Bedoukian
Bedoukian Research, Inc.

County of Residence of First Listed Defendant    Fairfield
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Attorneys (If Known)

John R. Horvack, Jr.-- Carmody & Torrance LLP
50 Leavenworth St., Waterbury, CT 06721   (203) 575-1200

## II. BASIS OF JURISDICTION  (Place an "X" in One Box Only)

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                    and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT  (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☒ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 790 Other Labor Litigation | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | Security Act | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN  (Place an "X" in One Box Only)

☐ 1 Original
Proceeding

☒ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

☐ 7 Appeal to District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC 1331 and 28 USC 1338(a)
Brief description of cause:
Plaintiff brought action against Defendants after Defendants filed  patent application as sole inventor of chemical.

## VII. REQUESTED IN
COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☐ Yes   ☐ No

## VIII. RELATED CASE(S)
IF ANY

(See instructions):

JUDGE

DOCKET NUMBER

DATE
12/15/06

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

=======================================

| | | |
|---|---|---|
| BIOSENSORY, INC. | : | NO. |
| Plaintiff | : | |
| VS. | : | |
| ROBERT BEDOUKIAN, BEDOUKIAN RESEARCH, INC. | : | |
| Defendants. | : | DECEMBER 15, 2006 |

=======================================

### NOTICE OF REMOVAL

TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT:

The Petitioners, Defendants Robert Bedoukian and Bedoukian Research, Inc., represent as follows:

1.      The Petitioners desire to remove this action, under the provisions of Title 28 U.S.C. §1441 et seq., from the Superior Court, Judicial District of Windham at Willimantic, in which the case is now pending under the name and style of Biosensory, Inc. v. Roubert Bedoukian, Bedoukian Research, Inc.

2.      This is a civil action in which the District Court of the United States has original jurisdiction under the provisions of Title 28 U.S.C. §1331 and 28 U.S.C. §

1338 (a), and may be removed to this Court by Petitioners pursuant to the provisions of Title 28 U.S.C. §1441.

  3.  The basis of the plaintiff's Complaint is that the Defendant Robert Bedoukian wrongfully filed patent applications naming himself as the sole inventor of the chemical "d-linalool." Removal is therefore proper under 28 U.S.C. §1441 because plaintiff's Complaint involves a federal question relating to the inventorship. 28 U.S.C. § 1338 (a) grants exclusive jurisdiction to the District Court for any civil action arising under any Act of Congress relating to patents. The issue of inventorship, who actually invented the subject matter claimed in a patent, is a substantial federal question. MCV, Inc. v. King-Seeley Thermos Co., 870 F.2d 1568 (Fed. Cir., 1989).

  4.  Venue of this Action in this District is proper pursuant to 28 U.S.C. §1391(b) because all defendants reside in the State of Connecticut.

  5.  This Notice is filed on behalf of all Defendants who have been served in this matter, and all such Defendants hereby consent to removal of this action to the United States District Court.

  6.  The Defendants submit this Notice without waiving any defenses to the claims asserted by plaintiff or conceding that plaintiff has pled claims upon which relief may be granted.

  7.  In accordance with 28 U.S.C. §1446, the Defendants attach hereto as Exhibit "A" copies of the Summons and Complaint served by the plaintiff.

{W1475627}

- 2 -

CARMODY & TORRANCE LLP
104Attorneys at Law
50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

8.    Contemporaneously with filing this Notice of Removal in this Court, the Defendants are filing a copy of its Notice with the Clerk of the Superior Court of the State of Connecticut, Judicial District of Windham at Willimantic. A copy of the Defendants' Notice of Filing of Notice of Removal, filed with the Superior Court of the State of Connecticut, Judicial District of Windham at Willimantic, is attached hereto as Exhibit "B".

WHEREFORE, the Petitioners pray that this action be removed to this Court and that this Court accept jurisdiction of this action and henceforth that this action be placed on the docket of this Court for further proceedings.

THE DEFENDANTS ROBERT BEDOUKIAN AND BEDOUKIAN RESEARCH, INC.

By: _____
John R. Horvack, Jr.
Federal Bar No. ct12926
Carmody & Torrance, LLP
50 Leavenworth Street
P.O. Box 1110
Waterbury, CT 06721-1110
Phone: 203 573-1200
Fax: 203 575-2600
Email: jhorvack@carmodylaw.com

{W1475627}

- 3 -

## CERTIFICATION

This is to certify that a copy of the foregoing has been mailed, postage

prepaid, on the above date, to:

Ian E. Bjorkman
Wiggin and Dana
One Century Tower
New Haven, CT 06508

John R. Horvack, Jr.
Federal Bar No. ct12926
Carmody & Torrance, LLP
50 Leavenworth Street
P.O. Box 1110
Waterbury, CT  06721-1110
Phone: 203 573-1200
Fax: 203 575-2600
Email:  jhorvack@carmodylaw.com

{W1475627}

- 4 -

# EXHIBIT A

**SUMMONS - CIVIL**
**(Except Family Actions)**
JD-CV-1 Rev. 1-2000
C.G.S. §51-346, 51-347, 51-349, 51-350, 52-45a,
52-48, 52-259, P.B. Secs 3-1 thru 3-21, 8-1

**STATE OF CONNECTICUT**
**SUPERIOR COURT**
www.jud.state.ct.us

| "X" ONE OF THE FOLLOWING: |
|---|
| *Amount, legal interest or property in demand, exclusive of interest and costs is:* |
| ☐ less than $2,500 |
| ☐ $2,500 through $14,999.99 |
| ☒ $15,000 or more |
| *("X" if applicable)* |
| ☒ Claiming other relief in addition to or in lieu of money or damages. |

**INSTRUCTIONS**
1. Type or print legibly: sign original summons and conform all copies of the summons.
2. Prepare or photocopy conformed summons for each defendant.
3. Attach the original summons to the original complaint, and attach a copy of the summons to each copy of the complaint. Also, if there are more than 2 plaintiffs or 4 defendants prepare an JD-CV-2 and attach it to the original and all copies of the complaint.
4. After service has been made by a proper officer, file original papers and officer's return with the clerk of court.
5. The party recognized to pay costs must appear personally before the authority taking the recognizance.
6. Do not use this form for actions in which an attachment, garnishment or replevy is being sought. See Practice Book Section 8-1 for other exceptions.

TO: Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to make due and legal service of this Summons and attached Complaint.

**RETURN DATE** (Mo., day, yr.)
(Must be a Tuesday) . **12-12-06**

| | | |
|---|---|---|
| ☒ JUDICIAL DISTRICT | AT (Town in which writ is returnable) (C.G.S. 51-346, 51-349) | **CASE TYPE** (See JD-CV-1c) |
| ☐ HOUSING SESSION   ☐ G.A. NO. | **Windham** | Major **M**   Minor **00** |

ADDRESS OF COURT CLERK WHERE WRIT AND OTHER PAPERS SHALL BE FILED (No., street, town and zip code) (C.G.S. 51-346, 51-350)
**108 Valley Street, Willimantic, CT 06226**

**TELEPHONE NO.** (with area code)
**(860)423-8491**

| PARTIES | NAME AND ADDRESS OF EACH PARTY NOTE: Individuals' Names:<br>(No., street, town and zip code)    Last, First, Middle Initial | ☐ Form JD-CV-2 attached | PTY<br>NO. |
|---|---|---|---|
| **FIRST NAMED PLAINTIFF** | BioSensory, Inc., 107 Providence St., Putnam, CT 06260 | | 01 |
| Additional Plaintiff | | | 02 |
| **FIRST NAMED DEFENDANT** | Bedoukian, Robert H., 71 Limekiln Rd., West Redding, CT 06896 | | 50 |
| Additional Defendant | Bedoukian Research, Inc., 21 Finance Drive, Danbury, CT 06810 | | 51 |
| Additional Defendant | | | 52 |
| Additional Defendant | | | 53 |

## NOTICE TO EACH DEFENDANT

1. YOU ARE BEING SUED.
2. This paper is a Summons in a lawsuit.
3. The Complaint attached to these papers states the claims that each Plaintiff is making against you in this lawsuit.
4. To respond to this Summons, or to be informed of further proceedings, you or your attorney must file a form called an "Appearance" with the Clerk of the above-named Court at the above Court address on or before the second day after the above Return Date.
5. If you or your attorney do not file a written "Appearance" form on time, a judgment may be entered against you by default.

6. The "Appearance" form may be obtained at the above Court address.
7. If you believe that you have insurance that may cover the claim that is being made against you in this lawsuit, you should immediately take the Summons and Complaint to your insurance representative.
8. If you have questions about the Summons and Complaint, you should consult an attorney promptly. The Clerk of Court is not permitted to give advice on legal questions.

| DATE<br>**10-27-2006** | SIGNED (Sign and "X" proper box) | ☒ Comm. of Superior Court<br>☐ Assistant Clerk | TYPE IN NAME OF PERSON SIGNING AT LEFT<br>**Ian E. Bjorkman** |
|---|---|---|---|

**FOR THE PLAINTIFF(S) PLEASE ENTER THE APPEARANCE OF:**

| NAME AND ADDRESS OF ATTORNEY, LAW FIRM OR PLAINTIFF IF PRO SE (No., street, town and zip code)<br>**Wiggin And Dana, One Century Tower, New Haven, CT 06508** | TELEPHONE NUMBER<br>**203-498-4496** | JURIS NO. (if atty. or law firm)<br>**67700** |
|---|---|---|

| NAME AND ADDRESS OF PERSON RECOGNIZED TO PROSECUTE IN THE AMOUNT OF $250 (No., street, town and zip code)<br>**Christine Gill, One Century Tower, New Haven, CT 06508** | SIGNATURE OF PLAINTIFF IF PRO SE |
|---|---|

| # PLFS. | # DEFS. | # CNTS. | SIGNED (Official taking recognizance; "X" proper box) | ☒ Comm. of Superior Court<br>☐ Assistant Clerk | For Court Use Only |
|---|---|---|---|---|---|
| 1 | 2 | 7 | | | FILE DATE |

**IF THIS SUMMONS IS SIGNED BY A CLERK:**
a. The signing has been done so that the Plaintiff(s) will not be denied access to the courts.
b. It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law.
c. The Clerk is not permitted to give any legal advice in connection with any lawsuit.
d. The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any errors or omissions in the Summons, any allegations contained in the Complaint, or the service thereof.

| | | For Court Use Only |
|---|---|---|
| I hereby certify I have read and understand the above: | SIGNED (Pro Se Plaintiff) | DATE SIGNED | DOCKET NO. |

*A true copy,*
*attest*
*Sullivan J.C.*
*Fairfield C. Sherff Marshall*
**10/27/06**

ORIGINAL

| | |
|---|---|
| RETURN DATE:  December 12, 2006 | : SUPERIOR COURT |
| | : |
| | : |
| | : |
| | : JUDICIAL DISTRICT OF |
| BIOSENSORY, INC., | : WINDHAM AT WILLIMANTIC |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| ROBERT BEDOUKIAN, | : |
| BEDOUKIAN RESEARCH, INC., | : |
| | : |
| Defendants. | : |
| | : OCTOBER 27, 2006 |

## VERIFIED COMPLAINT

Plaintiff, BioSensory, Inc., for its verified complaint alleges:

### NATURE OF THE ACTION

1.  This is an action seeking preliminary and permanent injunctive relief and for damages for breach fiduciary duty, breach of confidentiality agreements, breach of contract, unfair and deceptive trade practices, unfair competition, unjust enrichment, conversion, misappropriation of trade secrets and tortious interference with contractual rights and business expectancies.

2.  Plaintiff BioSensory, Inc., ("BioSensory" or the "Company") will suffer irreparable harm as a direct and indirect result of the Defendants' conduct.  Unless the Defendants are enjoined from continuing in their unlawful conduct BioSensory's, business will be irreparably harmed.

BioSensory, also is suffering monetary damages as a direct and indirect result of Defendants' conduct. This action is brought to obtain compensation for BioSensory for such damages and to prevent further monetary damage.

4.      BioSensory is a Delaware corporation with its principal place of business at 107 Providence, Street, Putnam, Connecticut 06260. BioSensory is authorized to do business in Connecticut.

5.      Defendant Robert H. Bedoukian is the President of Bedoukian Research, Inc., and a former director of BioSensory. Bedoukian owns approximately 11% of the issued and outstanding BioSensory stock. Upon information and belief, Bedoukian resides in Redding Connecticut.

6.      Defendant Bedoukian Research, Inc. ("BRI") is a Connecticut company having its principal place of business at 21 Finance Drive, Danbury, Connecticut 06810

7.      BioSensory is a privately held company and a world leader in the development of highly effective, environmentally sensitive mosquito control technologies. Many of these technologies are found in today's best brand name mosquito products. BioSensory offers several innovative products, including Conceal Candles, Mosquito 'Cognito* and the Dragonfly* System, each with a unique ability - using inhibitors or attractants or both -- to keep biting insects away from people.

8.      Some of BioSensory's products are based on patents relating to technology devised by the Company and its collaborators. Currently, BioSensory is the licensee of four patents. Generally these patents relate to the methods and chemical compositions for attracting or repelling insects including mosquitoes and biting midges.

2

9.      BioSensory's technology is based on years of collaborative development among chemists, entomologists, engineers and other experts.  BioSensory has collaborated for many years with the United States Department of Agriculture ("USDA").  It has also collaborated with scientists at the Harvard School of Public Health and chemical companies including BRI.

10.      A key element of BioSensory's business model is its use of computers to model the behavior of mosquitoes (and other insects) in relation to their exposure to certain chemicals and environmental conditions.  By such computer modeling BioSensory is able to project results relating to the interaction between chemicals and insects in a matter of weeks, when such results could otherwise be obtained only through months or years of laborious field testing, if such results could be ever be reached.

11.      Three of the important chemicals used in BioSensory's formulations include, "octenol," and "octynol" which attract mosquitoes, and "linalool," which is a repellent.

12.      BioSensory is the exclusive licensees of United States patents 6,362,235 (March 26, 2002) and 6,660,775 (December 9, 2003) relating to the use of linalool.  J. A. Nolen, President of BioSensory, Bedoukian, Robert Maloney (formerly of BRI), and Daniel Kline of the USDA are named inventors on these two patents.  The chemicals described in these patents, and other jointly developed chemicals (including but not limited to certain other patents in which Nolen, Bedoukian and Kline are the inventors) are referred to herein as the "patented chemicals."  The term "patented chemicals" expressly includes, but is not limited to, linalool, octenol and octynol.

3

13.     In the 1990s BioSensory and the USDA entered into a Cooperative Research and Development Agreement with the objective of formulating attractants and repellants for mosquitoes and biting flies.

14.     In or around 1997 BioSensory entered into an agreement with Bedoukian and BRI in which they agreed to collaborate with BioSensory and the USDA by providing its chemistry expertise in the formulation and sourcing of insect kairomones. Pursuant to that agreement, BRI employees would be listed as inventors on patents when BioSensory and the USDA's patent attorneys believed it proper to do so. BRI agreed to provide BioSensory with the patented chemicals at BRI's normal prices. The defendants and BioSensory also agreed not to disclose the other party's confidential information. Further, BRI and BioSensory agreed not to compete with each other, or supply patented chemicals to the other party's competitors. This agreement is referred to herein as the "BioSensory/BRI Agreement."

15.     In or around March 2002 a meeting was held among representatives of BioSensory, USDA and BRI. In that meeting it was agreed that certain chemicals should be tested with regard to their attractant and repellent characteristics. There was general agreement by the parties as to the chemicals that should be tested. Thereafter such testing occurred at USDA laboratories and by July 2002 the raw data indicated that "d-linalool" (an enantiomer of "linalool") was a superior spatial repellant and that "r-octenol" and "r-octynol" were superior attractants.

16.     On November 26, 2002 Bedoukian was elected to the BioSensory Board of Directors.

4

17.     In December 2002 the BioSensory/BRI Agreement was slightly modified so that BioSensory agreed that it would buy patented chemicals only from BRI; and that BRI would supply the patented chemicals exclusively to BioSensory.

18.     During the period January through October 2003 BioSensory worked with the Harvard School of Public Health on a number of projects including an investigation of the effect of "d-linalool" on non-native mosquito species. This testing again demonstrated the chemical's repellant characteristics and those results were shared with Bedoukian.

19.     In September 2003, Bedoukian and J. Nolen, of BioSensory, generally discussed issues relating to obtaining a patent on "d-linalool." Nolen told Bedoukian that if such a patent was even necessary or appropriate (in light of the existing and pending linalool patents) that Nolen, Kline and Bedoukian should be recognized as the inventors as was the case with other patents that resulted from their collaboration.

20.     Less than a month later Bedoukian filed with the United States Patent Office a provisional patent application relating to "d-linalool" without notifying BioSensory, even though he was a director of the Company. In that patent application Bedoukian improperly identified himself as the sole inventor. The patent application described results that were virtually identical to results that had previously been achieved through testing by BioSensory and the USDA. Later, Bedoukian also filed two patent applications relating to "r-octenol" and "r-octynol." In these two patent applications Bedoukian also improperly identified himself as the sole inventor. The patent applications described results that were virtually identical to results that had previously been achieved through testing by BioSensory and the USDA.

5

21.     In September 2006, Bedoukian informed BioSensory that he did not believe that "d-linalool" was subject to the exclusive sales arrangement set forth in the BioSensory/BRI Agreement.  Bedoukian told Nolen that he believed that BRI was fee to sell "d-linalool" to others, including BioSensory's competitors, because it was not a patented chemical.

22.     Not only did Bedoukian wrongfully file patent applications naming himself as sole inventor, to the detriment of the Company, but he caused BRI to sell patented chemicals to BioSensory at prices that were well above the market rate.  Bedoukian did not disclose to BioSensory that he was self-dealing because the patented chemicals were available from other suppliers at much lower prices.  Bedoukian and BRI took advantage of BioSensory's compliance with the exclusive purchase agreement by price gouging because the Company believed that it was not free to buy such chemicals on the open market.

## COUNT I
## BREACH OF FIDUCIARY DUTY

1-22.   The allegations of Paragraphs 1 through 22 are fully incorporated in Count I.

23.     Bedoukian was a director of BioSensory during the period November 26, 2002 through November 30, 2004 and therefore owed it a fiduciary duty.

24.     Bedoukian breached his fiduciary duty to BioSensory by filing a provisional patent application for the "method and compositions for inhibiting the scent tracking ability of mosquitoes and biting midges," naming himself as the sole inventor when the true inventors included J. Nolen of BioSensory, Dr. Ulrich Bernier of the USDA and Dr. Daniel Kline of the USDA.  He also breached his fiduciary duty by filing other patent applications relating to discoveries made by BioSensory and the USDA that falsely identified him as the sole inventor.

6

25.     Bedoukian breached his fiduciary duty to BioSensory by using information he obtained in his capacity as a director for his own benefit and to the detriment of BioSensory.

26.     Bedoukian breached his fiduciary duty to BioSensory by failing to maintain as confidential information that he received from BioSensory.

27.     Bedoukian breached his fiduciary duty to BioSensory by causing BRI to charge BioSensory exorbitant prices for the patented chemicals.

28.     Bedoukian has, or will, breach his fiduciary duty to BioSensory if he causes BRI to sell patented chemicals to entities other than the Company.

29.     Bedoukian's actions constitute breaches of his fiduciary duty to BioSensory because he used his position of trust and confidence to further his private interests. Bedoukian had the duty, not only affirmatively to protect the interests of the Company, but also to refrain from doing anything that would work injury to it, or to deprive it of profit or advantage which his skill and ability might properly bring to it.  Bedoukian failed to provide to BioSensory his undivided and unselfish loyalty and ensure that there was no conflict between his duty as a corporate director and his self-interest.

30.     BioSensory was damaged by Bedoukian's actions and will be irreparably harmed if not enjoined from such action in the future.

31.     BioSensory suffered, and will suffer, monetary damages as a result of Bedoukian's breach of fiduciary duty.

## COUNT II
## BREACH OF CONTRACT

1-31.   The allegations of Paragraphs 1 through 32 are fully incorporated in Count II.

32.     Bedoukian and BRI agreed to maintain the confidentiality of information learned during their collaboration with BioSensory.

7

33.   Bedoukian and BRI agreed to supply BioSensory with patented chemicals at a market price.

34.   Bedoukian and BRI failed to maintain the confidentiality of information learned during their collaboration with BioSensory.

35.   Bedoukian and BRI did not supply BioSensory with patented chemicals at a market price, but charged prices that were many times higher than the market price.

36.   Bedoukian and BRI breached their contract with BioSensory.

37.   BioSensory was damaged, and will continue to be damaged, by Bedoukian and BRI's breach of contract.

## COUNT III
## MISAPPROPRIATION OF TRADE SECRETS

1-37.   The allegations of Paragraphs 1 through 38 are fully incorporated in Count III.

38.   As a director of the Company Bedoukian held a position of trust in which he had access to BioSensory's confidential information and trade secrets.

39.   Bedoukian and BRI had knowledge of the confidential nature of BioSensory's technology, operations and intellectual property.

40.   Bedoukian and BRI had knowledge of the efforts taken by BioSensory to protect the confidential nature of its technology, operations and intellectual property.

41.   BioSensory's technology, operations and intellectual property are not generally known and are not ascertainable by third parties by proper means.

42.   BioSensory's technology and methodology derive independent economic value from not being generally known.

8

43.   BioSensory has made reasonable efforts to maintain the secrecy of its technology and methodology.

44.   BioSensory's technology and methodologies qualify as trade secrets as defined by Conn. Gen. Stat § 35-51(d).

45.   Upon information and belief, the Defendants have misappropriated BioSensory's trade secrets by acquiring them through improper means as defined by Conn. Gen. Stat. § 35-51(b).

46.   Upon information and belief, the Defendants' misappropriation was willful and malicious.

47.   As a direct result of these actions, BioSensory has sustained irreparable and actual damage including but not limited to damage to its goodwill, intellectual property rights, and monetary damages including costs and attorneys' fees.

48.   In addition, the Defendants' misappropriation has caused BioSensory irreparable damage in ways, extents, and amounts to be further ascertained.  Upon information and belief, the misappropriation will continue to the continued and irreparable harm to the Company in ways and extents that are not fully compensable in monetary damages.

### COUNT IV
### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS AND BUSINESS EXPECTANCIES

1-48.   The allegations of Paragraphs 1 through 49 are fully incorporated in Count IV.

49.   Beneficial business relationships and business expectancies exist between BioSensory and its customers.

9

50.     The Defendants were at all times aware of the beneficial business relationships and business expectancies that exist between BioSensory and its customers.

51.     Without privilege or justification, the Defendants have intentionally and tortiously interfered with BioSensory's beneficial business relationships and business expectancies by promoting. offering for sale, selling and/or threatening to sell the patented chemicals to entities other than BioSensory including the Company's competitors and customers.

52.     As a direct and proximate cause of the Defendants' wrongful and intentional interference with BioSensory's beneficial business relationships and business expectancies, the Company has sustained irreparable damage including but not limited to damage to its goodwill, intellectual property rights, and monetary damages including costs and attorneys' fees.

53.     The complained of activities were undertaken by the Defendants with knowledge of BioSensory's beneficial business relationships and business expectancies and in willful and malicious disregard thereof.

54.     The Defendants' tortious interference with BioSensory's business relationships and business expectancies has caused the Company irreparable and actual damage in ways, extents and amounts to be further ascertained.  Unless and until enjoined by this Court, the tortious interference will continue and cause irreparable harm to the Company in ways and extents that are not fully compensable in monetary damages.

/

## COUNT V
## CONVERSION

1-54.   The allegations of Paragraphs 1 through 55 are fully incorporated in Count V.

55.   BioSensory's technology and intellectual property was, prior to the

Defendants' wrongful actions, in the Company's custody, possession, and control.

56.   The Defendants have wrongfully and without authorization converted and

exercised ownership over this property by, among other things, selling, using, sub-licensing,

or otherwise making the patented chemicals available to others without the authorization,

knowledge or permission of BioSensory.

57.   The Defendants have assumed, and continue to exercise, control over

BioSensory's technology and intellectual property to the exclusion of the Company's legal

rights, permanently or for an indefinite time.

58.   As a direct result of the Defendants' conversion, BioSensory has incurred and

will continue to incur a loss of property and/or money not yet fully ascertained.  In addition,

the Defendants' conversion has irreparably harmed and will continue to irreparably harm the

Company in ways and extents that are not fully compensable in monetary damages.

## COUNT VI
## VIOLATION OF CONNECTICUT UNFAIR TRADE PRACTICES ACT

1-58.   The allegations of paragraphs 1 through 61 are fully incorporated in Count

VI.

59.   The Defendants' breach of fiduciary duty, unfair competition, improper use

of trade secrets, conversion, tortious interference, and breach of contract as set forth herein

and the Defendants' other activities are unfair, deceptive, immoral, unethical and against

public policy in violation of Connecticut General Statute § 42-110(a) *et. seq.*

11

60.     The Defendants' misconduct occurred in the conduct of trade or commerce and caused and will continue to cause substantial injury to consumers, competitors and/or other businesspeople.

61.     As a direct result of the Defendants' unfair trade practices, BioSensory has incurred and will continue to incur an ascertainable loss of property and/or money in an amount not yet fully ascertained.  In addition, the Defendants' unfair trade practices have irreparably harmed and will continue to irreparably harm the Company in ways and extents that are not fully compensable in monetary damages.

## COUNT VII
## UNJUST ENRICHMENT

1-61.     The allegations of paragraphs 1 through 62 are fully incorporated in Count VI.

62.     The Defendants have benefited from their use of the Company's technology, intellectual property, and goodwill.

63.     The Defendants unjustly have not compensated BioSensory for this benefit to the Company's detriment.

64.     As a direct result of these actions, the Defendants have been unjustly enriched and have benefited to BioSensory's detriment in an amount not yet fully ascertained.  In addition, the Defendants' unjust enrichment has irreparably harmed and will continue to irreparably harm the Company in ways and extents that are not fully compensable in monetary damages.

12

**WHEREFORE,** BioSensory prays for relief as follows:

A.      That the Court temporarily and permanently enjoin the Defendants from selling patented chemicals to any entity other than BioSensory.

B.      That the Court temporarily and permanently enjoin the Defendants from the use of BioSensory's confidential information, proprietary information and trade secrets.

C.      That BioSensory be awarded damages;

D.      That BioSensory be awarded punitive damages;

E.      That BioSensory be awarded its attorneys' fees and costs;

F.      That BioSensory be awarded pre-judgment interest on its damages.

G.      That BioSensory be awarded such other and further relief as the Court may deem just and proper.

BIOSENSORY, INC.

By: _____

        Ian E. Bjorkman
        Wiggin & Dana LLP
        One Century Tower
        New Haven, CT  06508-1832
        (203) 498-4496
        Fax: (203) 782-2889
        Juris No. 67700
        Its Attorneys

\1\501\620869.1

| | |
|---|---|
| RETURN DATE:  December 12, 2006 | :  SUPERIOR COURT |
| | : |
| | : |
| | : |
| | : |
| | :  JUDICIAL     DISTRICT     OF |
| BIOSENSORY, INC.., | :  WINDHAM AT WILLIMANTIC |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| ROBERT BEDOUKIAN, | : |
| BEDOUKIAN RESEARCH, INC., | : |
| | : |
| Defendants. | : |
| | :  OCTOBER 27, 2006 |

## STATEMENT OF AMOUNT IN DEMAND

BioSensory, Inc. claims damages in an amount in excess of fifteen thousand dollars

($15,000.00), exclusive of interest and costs.

BIOSENSORY, INC.

By: _____

Ian E. Bjorkman
Wiggin & Dana LLP
One Century Tower
New Haven, CT  06508-1832
(203) 498-4400
Fax: (203) 782-2889
Juris No. 67700
Its Attorneys

14

## VERIFICATION

STATE OF CONNECTICUT          )
                             )          ss: Putnam, Connecticut
COUNTY OF WINDHAM            )

I, J. A. Nolen, being duly sworn, depose and say that I am the President of BioSensory, Inc. and that I have read the allegations of the Verified Complaint and they are true to the best of my knowledge, information and belief, based on my own personal knowledge or on information supplied to me by others, which I believe to be true and correct.

_____

Subscribed and sworn on this 26th day of October, 2006, before me.

_____
Notary Public

SARA J. SENEY
NOTARY PUBLIC
MY COMMISSION EXPIRES AUG. 31, 20__

15

# EXHIBIT B

DOCKET NO.: WWM-CV-06-4005240-S    :    SUPERIOR COURT

BIOSENSORY, INC.,    :    J.D. OF WINDHAM

VS.    :    AT WILLIMANTIC

ROBERT BEDOUKIAN,    :
BEDOUKIAN RESEARCH, INC.        DECEMBER15, 2006

## DEFENDANTS ROBERT BEDOUKIAN'S AND BEDOUKIAN RESEARCH INC.'S NOTICE OF FILING NOTICE OF REMOVAL

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1441 and 1446,

Defendants, Robert Bedoukian and Bedoukian Research, Inc., have filed a Notice of

Removal with the Clerk of the United States District Court for the District of Connecticut.

Pursuant to 28 U.S.C. § 1446(d), this Court is respectfully request to effect the removal

and to proceed no further in this action unless and until the action is remanded by the

United States District Court.  A copy of the Notice of Removal filed with the United

States District Court for the District of Connecticut is attached and filed with this

document.

THE DEFENDANTS,

By

    John R. Horvack, Jr.
For:    Carmody & Torrance
    Its Attorneys

CARMODY & TORRANCE LLP
Attorneys at Law
Juris No. 08512

50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

{W1475893}

## CERTIFICATION

This is to certify that a copy of the foregoing has been mailed, postage prepaid,

on the above date, to:

Ian E. Bjorkman
Wiggin and Dana
One Century Tower
New Haven, CT 06508

John R. Horvack, Jr.

CARMODY & TORRANCE LLP
Attorneys at Law
Juris No. 08512

50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

{W1475893}

- 2 -

1043108. 01